OPINION
{¶ 1} Respondent-appellant, Richard Roth, appeals two decisions of the Butler County Court of Common Pleas, Domestic Relations Division. In case number CA2006-03-054, Roth appeals the trial court's denial of his motion to set aside a civil protection order. In case number CA2006-03-070, Roth appeals the court's sua sponte issuance of an amended civil protection order. For the reasons outlined below, we affirm both *Page 2 
decisions.
 {¶ 2} Roth and petitioner-appellee, Tilly Ashburn, are the parents of minor child Sophia B., born August 4, 2002. The unwed couple cohabited in Chicago until Ashburn moved to Ohio, where she gave birth to Sophia. Ashburn and the child currently reside in Ohio while Roth resides in Illinois. According to Ashburn, Roth physically and emotionally abused her throughout their relationship. He has continued to stalk and threaten Ashburn since she moved to Ohio, including repeated threats to kill her and kidnap Sophia.
 {¶ 3} In April 2003, Roth filed a paternity action in Illinois state court. The parties thereafter entered into an agreement providing for joint custody of Sophia. This agreement was filed with the Illinois court in April 2004. Ashburn insists that Roth coerced her into signing the agreement, threatening to obtain sole custody of Sophia if Ashburn did not cooperate.
 {¶ 4} In late 2004, Ashburn filed a motion to modify Roth's visitation to require supervision. Shortly after, Roth filed a motion for sole custody of Sophia. The Illinois court overruled both motions and upheld the April 2004 custody agreement. In July 2005, the parties filed a second agreed order with the Illinois court which allocated additional visitation time to Roth.
 {¶ 5} Ashburn alleges that Roth's intimidating behavior escalated after his visitation with Sophia began. He repeatedly threatened to kidnap Sophia, and on one occasion made a reference to placing Ashburn and Sophia in the trunk of a car and driving the car into the river. Ashburn filed for and was granted an ex parte temporary protection order against Roth in August 2005. The ex parte order named Ashburn and Sophia as protected persons. *Page 3 
 {¶ 6} The trial court conducted a full hearing on the matter in October 2005. Following the hearing, the court issued a consent order naming Ashburn as the protected person and outlining a visitation schedule for Roth and Sophia. The order specified that there was no finding of domestic violence. Roth expressed his willingness to accept the portion of the consent order prohibiting contact between him and Ashburn, but objected to there being any restriction on his visitation with Sophia.
 {¶ 7} In December 2005, Roth filed a motion to set aside the consent order on the grounds that the Ohio domestic relations court lacked jurisdiction to alter his visitation with Sophia. The court overruled Roth's motion in a decision filed on February 22, 2006. Thereafter, on March 1, 2006, the trial court sua sponte issued an amended civil protection order ("CPO") including Sophia as a protected person. Roth timely appealed the February 22 decision on March 13, 2006 and the March 1 decision on March 30, 2006. The appeals were consolidated, and Roth's two assignments of error are now before this court.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED IN ISSUING THE CIVIL PROTECTION ORDER (T.D. 17) BECAUSE IT LACKED SUBJECT MATTER JURISDICTION BASED ON THE EXISTING ORDERS AND PENDING PROCEEDINGS OF THE ILLINOIS CIRCUIT COURT."
 {¶ 10} Roth argues that the Ohio domestic relations court could not properly exercise subject matter jurisdiction over the case because exclusive jurisdiction was vested in the Illinois trial court. Roth complains that the Ohio court wrongly issued a visitation schedule that conflicted with the Illinois court orders establishing the parties' parental rights and responsibilities. Because the Illinois court had already made a *Page 4 
custody determination and did not relinquish jurisdiction, Roth maintains that the law prohibited the Ohio court from interfering in the matter and modifying his visitation rights.
 {¶ 11} A reviewing court will not reverse a lower court's exercise of discretion in determining jurisdictional issues involved in an interstate custody or visitation dispute absent an abuse of discretion.Durgans v. Durgans (Feb. 9, 2001), Portage App. No. 2000-P-0026,2001 WL 114983, at *3. An abuse of discretion connotes more than an error of law; rather, it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 12} Under Ohio's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1] Ohio courts must give full faith and credit to valid child custody determinations of sister states. R.C. 3127.33(A). See, also, Section 1738A(a), Title 28, U.S.Code. For the initial custody determination of a court to be valid and therefore entitled to full faith and credit, the court must have jurisdiction over the matter. The UCCJEA establishes the circumstances under which an Ohio court making such a determination properly has jurisdiction. See R.C. 3127.15. See, also, Section 1738A(c)(2), Title 28, U.S.Code.
 {¶ 13} Above all, the UCCJEA prioritizes "home state" jurisdiction. A child's "home state" is one where he or she lived with a parent for at least six consecutive months prior to the commencement of the custody or visitation proceeding. R.C. 3127.01(B)(7). See, also, Section 1738A(b)(4), Title 28, U.S.Code. A court that properly exercises jurisdiction over a child custody determination retains exclusive *Page 5 
continuing jurisdiction over the determination until that court or a court of another state determines that the child or the child's parents do not presently reside in the state. R.C. 3127.16. See, also, Section 1738A(d), Title 28, U.S.Code.
 {¶ 14} Illinois has also adopted the UCCJEA. Therefore, the same jurisdictional considerations, such as the preference for home state jurisdiction, operate under Illinois law. See 750 IIl.Comp.Stat. 36/201(a).
 {¶ 15} In view of the aforementioned statutory law, we conclude that the Ohio domestic relations court was not required to afford full faith and credit to the Illinois court orders. The Illinois court could not properly exercise jurisdiction over the visitation determination. The uncontroverted evidence shows that Sophia has lived in Ohio since her birth. The record does not reveal that Sophia lived in Illinois at any point in time, much less the six consecutive months prior to the filing of Roth's paternity action in 2003. Ohio retained home state jurisdiction over the matter, and there is no evidence that Ohio courts declined to exercise such jurisdiction. The Ohio domestic relations court was thus not obliged to afford full faith and credit to the Illinois court's custody determination, and the Ohio court properly assumed jurisdiction over the matter as Sophia's home state.
 {¶ 16} We also note that the domestic relations court was well within its discretion when it issued the initial CPO. A trial court may properly grant a CPO where it finds that the petitioner has shown by a preponderance of the evidence that the petitioner, or the petitioner's family or household members, are in danger of domestic violence.Felton v. Felton, 79 Ohio St.3d 34, 1997-Ohio-302, paragraph two of syllabus. "Domestic violence" includes placing a family or household member "* * * by threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 *Page 6 
[2903.21.1] or 2911.211 [2911.21.1] of the Revised Code[.]" R.C.3113.31(A)(1)(b).
 {¶ 17} Roth did not dispute Ashburn's testimony regarding his increasingly intimidating and controlling behavior towards her. Roth's threatening conduct and statements, which the trial court described as "chilling and strange," posed a legitimate threat to the safety and welfare of Ashburn and Sophia. The issuance of the CPO accords with the purposes of Ohio's civil domestic violence statute. See R.C. 3113.31. The domestic relations court is charged with ensuring the safety and protection of family and household members in Ohio. Couch v.Harrison, Clermont App. No. CA2000-08-063, at 6, 2001-Ohio-4199. The civil domestic violence statute authorized the court to issue its temporary order to protect Ashburn and Sophia from the threatening behavior exhibited by Roth. Id.
 {¶ 18} Even if the Illinois court orders had been found to be proper in this case, the Ohio domestic relations court was still within its authority to issue the initial CPO. The mere existence of visitation orders in another state does not form the basis upon which to deny a CPO when the petitioner is subject to the threat of violence. Cf. Thomas v.Thomas (1988), 44 Ohio App.3d 6, 8. The trial court found that Sophia needed protection from Roth's threats to harm and kidnap the child. Also, Ashburn clearly proved that Roth was harassing and intimidating her. Not only was it within the trial court's discretion to address Ashburn and Sophia's immediate need for protection, but it was the court's responsibility to issue an order ensuring their protection. While the CPO effectively restricted Roth's visitation with Sophia, the chief purpose of the order was to protect the child. In fashioning such an order, the court acted within its discretion and fulfilled its duty to protect the citizens of the state. To hold that a domestic relations court cannot issue an order to protect its citizens when there is an existing visitation *Page 7 
order from a foreign state is nonsensical. Such a holding would defeat the purpose of the domestic relations statute, which is to protect people from the harm.
 {¶ 19} We conclude that the Ohio domestic relations court did not abuse its discretion in exercising jurisdiction over the present matter and in issuing the initial CPO. Roth's first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE DOMESTIC RELATIONS COURT ERRED ISSUING THE AMENDED CIVIL PROTECTION ORDER (T.D. 31) ADDING SOPHIA AS A PROTECTED PARTY."
 {¶ 22} Roth raises three arguments for review under his second assignment of error. First, he claims that the amended CPO exceeds the scope of Civ.R. 60(A). Second, he maintains that the addition of Sophia as a protected person under the amended CPO was against the manifest weight of the evidence. Third, Roth revisits his jurisdictional argument and asserts that Ashburn engaged in forum shopping by pursuing this action in Ohio instead of heeding the Illinois court orders.
 {¶ 23} We review a trial court's decision to grant a CPO for an abuse of discretion. Woolum v. Woolum (1999), 131 Ohio App.3d 818, 821. As stated, Roth argues that the amended CPO was issued in violation of Civ.R. 60(A). A trial court is authorized to modify its judgments, orders, and decrees in accordance with Civ.R. 60(A). The rule permits the court to correct clerical mistakes in its decisions, as well as in other parts of the record, either on the court's own initiative or on motion of one of the parties. Civ.R. 60(A).
 {¶ 24} Although a court may correct clerical mistakes in accordance with Civ.R. 60(A), the rule does not permit the court to make substantive changes to a decision. A *Page 8 
"clerical mistake" is "a mistake or omission, mechanical in nature and apparent on the record which does not involve a legal decision or judgment." Zunshine v. Cott, Franklin App. No. 06AP-868, 2007-Ohio-1475, ¶ 17, quoting State ex rel. Litty v. Leskovyansky, 77 Ohio St.3d 97,100, 1996-Ohio-340. Conversely, a substantive change is "where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner." Gould v.Gould, Butler App. No. CA2004-01-010, 2005-Ohio-416, ¶ 29, quotingKeuhn v. Keuhn (1988), 55 Ohio App.3d 245, 247.
 {¶ 25} After thoroughly examining the record and considering the facts and circumstances of the case, we conclude that the trial court's failure to include Sophia as a protected party in the initial CPO was a clerical error. Ashburn's petition for the CPO named Sophia as a party for whom protection was necessary. Sophia was named a protected individual under the temporary ex parte order issued in August 2005. Additionally, in issuing its decision denying Roth's motion to set aside the CPO, the trial court noted that "[t]he harassment and intimidation of Ms. Ashburn by Mr. Roth was clearly proven. Sophia, at age three,also needs to be protected." (Emphasis added.) Thus, it is evident that the court intended to include Sophia as a protected person under the initial CPO, and the omission of her name from the order amounted to a clerical error. Because Civ.R. 60(A) authorizes a court to correct clerical errors in a decision, we conclude that the Ohio domestic relations court did not abuse its discretion in amending the CPO to include Sophia as a protected person.
 {¶ 26} Next, we address Roth's claim that the addition of Sophia as a protected party under the amended CPO was against the manifest weight of the evidence. An appellate court will not reverse a judgment as being against the manifest weight of the *Page 9 
evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. CE. Morris Co. v.Foley Const. Co. (1978), 54 Ohio St.2d 279, syllabus. We note that the trial court is in the best position to weigh the testimony and observe the witnesses' demeanor in order to gauge their credibility. In reJane Doe 1 (1991), 57 Ohio St.3d 135, 138. See, also, Davis v.Flickinger (1997), 77 Ohio St.3d 415, 419 (stating that credibility issues are very critical in custody cases as much may be evident from demeanor and attitude that does not translate into the record). Thus, this court must not substitute its judgment for that of the trial court when there is competent and credible evidence supporting the trial court's findings of fact and conclusions of law. Seasons Coal Co., Inc.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 27} There is significant evidence in the record demonstrating Sophia's need for protection from Roth. As stated, Ashburn testified that Roth has repeatedly threatened to kill her and kidnap Sophia. This appeared to be Roth's chief threat in attempting to force Ashburn to comply with his wishes, and he invoked the threat often. Roth seemed to be well aware that kidnapping Sophia would be the most effective way to hurt Ashburn. Removing Sophia from her mother, the only parent she has ever really known, would undoubtedly have a devastating emotional impact on the child. Ashburn also testified as to an incident where she was attempting to leave the house to get away from Roth and Roth began pulling Sophia out of Ashburn's arms, resulting in injury to the child. Further, as mentioned, Roth threatened to place Sophia in the trunk of a car along with Ashburn and drive the car into the river. Finally, Ashburn's sister testified that Roth offered her money to burn down Ashburn's house. While this was not a direct threat against Sophia, the potential danger to Sophia if such arson were committed is evident. *Page 10 
 {¶ 28} Notably, Roth did not take the witness stand to dispute any of the evidence against him. As the trial court is in the best position to judge the credibility of the witnesses, we trust that the court observed Ashburn's demeanor and observed her credibility accordingly. We find that the evidence before the trial court competently and credibly supports the court's finding that both Ashburn and Sophia were in danger of domestic violence. Therefore, the inclusion of Sophia in the protective order was not against the manifest weight of the evidence.
 {¶ 29} Finally, we have already disposed of the issue regarding the propriety of jurisdiction resting with Ohio. As a court located in Sophia's home state, the domestic relations court properly retained jurisdiction over the matter. Furthermore, there is no evidence to support Roth's argument alleging forum shopping by Ashburn. The fact that Ashburn pursued this action in the state in which both she and her daughter lived does not evidence underhanded motivates on the part of Ashburn.
 {¶ 30} Roth's second assignment of error is overruled.
 {¶ 31} Judgments affirmed.
YOUNG, P.J., and WALSH, J., concur.
 JUDGMENT ENTRY
The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Butler County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27.
Costs to be taxed in compliance with App.R. 24.
[1] R.C. 3127.01 et seq. The federal Parental Kidnapping Prevention Act (PKPA), Section 1738A et seq., Title 28, U.S. Code, also relates to the question of jurisdiction in cases involving interstate custody and visitation disputes. For the sake of simplicity, we will only discuss the applicable UCCJEA provisions, and will include citations to the relevant PKPA provisions where applicable. *Page 1