OPINION
{¶ 1} Plaintiff-appellant, Deneyse P. Serge, Administrator for the Estate of Denis Serge, Deceased, appeals a judgment of the Butler County Court of Common Pleas rendered in favor of defendants-appellees, Reconstructive Orthopaedics Sports Medicine, Inc., and Edward J. Berghausen, M.D., with respect to appellant's claims against appellees for malpractice and wrongful death. *Page 2 
 {¶ 2} Dr. Edward Berghausen is an orthopedic surgeon who was an employee of Reconstructive Orthopaedics Sports Medicine. Denis Serge was one of Dr. Berghausen's patients. In December 2001, Serge was admitted to Bethesda Hospital under Dr. Berghausen's care for treatment of chronic hip and lower back pain. During his stay in the hospital, Denis developed a deep vein thrombosis (DVT) or blood clot, which broke off and traveled to his lungs, resulting in a fatal pulmonary embolism. Denis was 35 years old at the time of his death, and is survived by his wife Denyse, who is the appellant in this case, and their two children.
 {¶ 3} Appellant, acting as administrator for Denis' estate, brought a medical malpractice and wrongful death claim against Reconstructive Orthopaedics Sports Medicine and Dr. Berghausen. Appellant alleged that the medical care Dr. Berghausen provided to Denis "fell below the acceptable minimum standard of care and was therefore negligent."
 {¶ 4} A jury trial was held on appellant's claims. At the close of evidence, appellant objected to the trial court's proposed jury instructions that the applicable standard of care as to Dr. Berghausen's conduct is that of "a reasonable specialist practicing medicine in that same specialty," and that Dr. Berghausen "is held to the standard of care that applies to all orthopaedic surgeons." Appellant argued that since the prevention and treatment of DVT is common to all branches of medicine, the applicable standard of care was one that applies to "a physician" or to "any physician who admits patients to a hospital." The trial court overruled appellant's objection.
 {¶ 5} The jury returned a verdict in favor of appellees as to all of appellant's claims.
 {¶ 6} Appellant now appeals, raising the following assignment of error:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT *Page 3 
IN INSTRUCTING THE JURY ON THE STANDARD OF CARE OF A SPECIALIST."[1]
 {¶ 8} Appellant argues that the trial court erred by instructing the jury that the applicable standard of care regarding Dr. Berghausen's conduct is that of "a reasonable specialist practicing medicine in that same specialty," and that Dr. Berghausen "is held to the standard of care that applies to all orthopaedic surgeons." She asserts that because the standard of care regarding the prevention and treatment of DVT is not different from one medical specialty to another, the trial court should have instructed the jury that the applicable standard of care was simply that of a reasonable physician. We disagree with this argument.
 {¶ 9} "A charge to the jury should be a plain, distinct and unambiguous statement of the law that is applicable to the case made before the jury by the proof adduced." Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. The trial court's function in giving a jury charge is "to state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired." Cleveland Elec.Illuminating Co. v. Astorhurst Land Co. (1985), 18 Ohio St.3d 268, 272;Stockdale v. Baba, 153 Ohio App.3d 712, 732, 2003-Ohio-4366.
 {¶ 10} In reviewing the propriety of a jury instruction, a reviewing court, after considering the jury charge as a whole, must determine whether the charge "probably misled the jury in a matter materially affecting the complaining party's substantial rights." Becker v. LakeCty. Mem. Hosp. West (1990), 53 Ohio St.3d 202, 208. The decision to give or not give a jury instruction generally lies within the trial court's sound discretion, and the court's exercise of that discretion will not be overturned absent an abuse thereof. Stockdale; State *Page 4 v. Martens (1993), 90 Ohio App.3d 338, 343. An abuse of discretion means the court's decision is arbitrary, unconscionable or unreasonable.Ashburn v. Roth, Butler App. Nos. CA2006-03-054, CA2006-03-070,2007-Ohio-2995, at ¶ 11.
 {¶ 11} "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."Bruni v. Tatsumi(1976), 46 Ohio St.2d 127, paragraph one of the syllabus.
 {¶ 12} "The standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field; therefore, geographical considerations or circumstances control neither the standard of the specialist's care nor the competence of the testimony of an expert in that specialty." Id. at paragraph two of the syllabus.
 {¶ 13} Section 331.01 of the Ohio Jury Instructions contains the following proposed instructions on the applicable standard of care for physicians or surgeons in medical malpractice cases:
 {¶ 14} "1. INTRODUCTION. This is a medical negligence claim brought by the plaintiff to recover damages for injuries claimed to have been caused by the defendant's negligence. The plaintiff must prove by the greater weight of the evidence that the defendant was negligent, that the defendant's negligence was a proximate cause of the plaintiff's *Page 5 
injuries, and that the plaintiff was damaged by the defendant's negligence. A (physician) (surgeon) is negligent if the (physician) (surgeon) fails to meet the required standard of care.
 {¶ 15} "2. NONSPECIALIST. The existence of a (physician-patient) (surgeon-patient) relationship places on the (physician) (surgeon) the duty to act as a (physician) (surgeon) of reasonable skill, care, and diligence under like or similar conditions or circumstances. This is known as the standard of care. The standard of care is to do those things which a reasonably careful (physician) (surgeon) would do and to refrain from doing those things which a reasonably careful (physician) (surgeon) would not do. The required standard of care is the same throughout the United States. If you find by the greater weight of the evidence that the defendant failed to meet this standard of care, then you shall find that he/she was negligent.
 {¶ 16} "3. SPECIALIST. A specialist is a (physician) (surgeon) who holds himself/herself out as specially trained, skilled, and qualified in a particular branch of (medicine) (surgery). The standard of care for a (physician) (surgeon) in the practice of a specialty is that of a reasonable specialist practicing (medicine) (surgery) exercising reasonable skill, care, and diligence under like and similar circumstances, regardless of where he/she practices. A specialist in any branch has the same standard of care as all other specialists in that branch. If you find by the greater weight of the evidence that defendant failed to meet this standard of care, then you shall find that he/she was negligent."
 {¶ 17} In this case, the trial court instructed the jury, over appellant's objections, as follows:
 {¶ 18} "[Appellant] must prove to you by the greater weight of the evidence[2] that *Page 6 
[appellee] Edward J. Berghausen, M.D. was negligent and proximately caused [appellant's] damages.
 {¶ 19} "What is medical negligence? Medical negligence is the failure to use that degree of care and skill that a reasonable and prudent doctor would have used under like and similar circumstances at that time of the alleged negligent acts.
 {¶ 20} "In order to prove medical negligence, or `malpractice,' [appellant] must show that [appellee] Edward J. Berghausen, M.D. did some particular thing or things that a doctor who was using ordinary skill, care, diligence * * * would not have done under the same or similar circumstances.
 {¶ 21} "The existence of a physician/patient relationship places on the physician the duty to act as would a physician of ordinary skill, care and diligence under like or similar conditions or circumstances. The standard of care is to do those things which such a physician would do or would not do. If you find by the greater weight of the evidence that [appellee] Edward Berghausen, M.D. failed to use that standard of care, then you may find that he was negligent. On the other hand, if you find by the greater weight of the evidence that [appellee], Edward Berghausen, M.D., used the appropriate standard of care, then you may not find that he was negligent.
 {¶ 22} "A physician or a surgeon is not negligent if he/she uses, for the treatment of the patient, that degree of knowledge, skill and care, ordinarily used by reasonable physicians and surgeons under the same or similar circumstances and conditions, in the same medical or surgical specialty.
 {¶ 23} "* * *
 {¶ 24} "A specialist is a physician who holds himself out as specially trained, skilled or qualified in a particular branch of medicine or surgery. The standard of care for a physician *Page 7 
in the practice of a specialty is that of a reasonable specialist practicing medicine in that same specialty, regardless of where he practices. A specialist in any one branch has the same standard of care as all other specialists in that branch.
 {¶ 25} "If you find by the greater weight of the evidence that [appellee or appellees] failed to use that standard of care, then you may find that he/she was negligent. In this case [appellee] Edward J. Berghausen, M.D. is held to the standard of care that applies to all orthopaedic surgeons.
 {¶ 26} "On the other hand, if you find by the greater weight of the evidence that [appellee Berghausen] used the appropriate standard of care, then you may not find that he was negligent. The specialty involved in this case is Orthopaedics.
 {¶ 27} "[Appellees] are not negligent unless negligence is proved by the greater weight of the evidence."
 {¶ 28} The trial court's instructions to the jury on the applicable standards of care largely track the first three paragraphs of Section331.01 of the Ohio Jury Instructions. The trial court essentially combined the instructions applicable to a physician or surgeon who is a "nonspecialist" with those applicable to a physician or surgeon who is a "specialist." When the instructions are read in their entirety, it is apparent that the trial court instructed the jurors that they were to hold Berghausen to the standard of care that applies to all orthopedic surgeons.
 {¶ 29} Appellant argues that the problem with the trial court's charge is that "the standard of care at issue regarding prevention and treatment of a DVT is not that of a particular medical specialty[,]" and that a physician like Dr. Berghausen is not practicing in the field of orthopedic surgery when it comes to taking steps to prevent or treat a DVT. She asserts that the prevention and treatment of DVT is a matter of elementary medicine or, as *Page 8 
she puts it, "basic medicine 101," and, therefore, the applicable standard of care in this case was merely that of a "reasonably prudent physician." We find this argument unpersuasive.
 {¶ 30} Initially, appellant has not cited any case on point in support of her argument, nor have we found any. Moreover, the case that appellant primarily relies upon, Schutte v. Mooney, 165 Ohio App.3d 56, is readily distinguishable from this one.
 {¶ 31} In Schutte, the estate of a patient who died as a result of a pulmonary thromboembolism brought a medical malpractice claim against Dr. Joseph F. Mooney, the emergency-room physician who had treated the patient. In support of its malpractice claim, the estate sought to have a vascular surgeon testify "as to the standard of care to be applied to an emergency-room physician." Id. at 59-60, ¶ 7. Dr. Mooney objected on the grounds that the vascular surgeon was not qualified to testify as to the standard of care applicable to an emergency-room physician. The trial court sustained Dr. Mooney's objection, which eventually resulted in a directed verdict in his favor. The estate appealed to the Second District Court of Appeals.
 {¶ 32} In a 2-1 decision, the Schutte court reversed the trial court's decision, ruling that the testimony of the estate's expert witness "indicated that he was qualified to testify to the standard of care required of emergency-room physicians who are presented with symptoms of DVT." The court noted that the expert witness testified that DVT is a problem with which every physician has to contend, and there was not "any difference in how the problem would be approached from one specialty to another." Consequently, the Schutte court determined that the trial court erred in concluding that the estate's expert was unqualified to testify as to the standard of care required of Dr. Mooney. Id. at 65, ¶ 35.
 {¶ 33} Appellant relies upon the above language in Schutte to support her argument that the trial court erred in instructing the jury that the applicable standard of care was that of *Page 9 
an orthopedic surgeon. However, Schutte is distinguishable for at least two reasons: First, it does not appear from the record before us that the trial court excluded the testimony of any of appellant's expert witnesses, including its chief expert, Dr. Gary Yarkony.
 {¶ 34} Second, the Schutte court tacitly accepted that the standard of care applicable to Dr. Mooney's conduct was the standard of care to be applied to an emergency-room physician. There is nothing inSchutte that suggests a physician's standard of care in dealing with a medical issue like the prevention and treatment of a DVT is merely that of a reasonable physician, and not that of a reasonable specialist, which in that case meant a reasonable emergency-room physician.
 {¶ 35} There is another problem with appellant's argument that a "nonspecialist" instruction be given where the medical issue involved is elementary or basic: Trial judges cannot be expected to know which medical problem, treatment, or procedure constitutes an "elementary" medical issue or "basic medicine 101" that requires a nonspecialist instruction to be given, and which medical problem, treatment, or procedure constitutes a more complicated or involved medical issue that requires a specialist instruction to be given.
 {¶ 36} By contrast, the Ohio Supreme Court's decision inBruni presents a clear rule: "The standard of care for a physician or surgeon in the practice of a board-certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field[.]" Bruni, 46 Ohio St.3d 127, at paragraph two of the syllabus. Bruni makes clear that the applicable standard of care to be applied to a physician in a malpractice case is dependent upon the physician's specialty and not the medical problem, treatment, or procedure involved.
 {¶ 37} In this case, appellant did not dispute in the portions of the transcript provided *Page 20 
or in her brief that Dr. Berghausen is an orthopedic surgeon. Therefore, the standard of care that applied to him was "that of a reasonable orthopedic surgeon practicing medicine or surgery in the same specialty in the light of present day scientific knowledge in that specialty field[.]" Id. The trial court's instructions to the jury were consistent with the law of this state, id., and therefore, the trial court did not abuse its discretion in issuing those instructions.
 {¶ 38} The assignment of error is overruled.
 {¶ 39} Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] Appellant has provided this court with only selected portions of the transcript of the jury trial, to wit: (1) the testimony of one of appellant's expert witnesses, (2) the parties' arguments at a side-bar conference made before and after the giving of jury instructions, (3) appellant's objection to the jury instructions and proffer of appellant's proposed jury instruction on the general standard of care, and (4) appellees' closing argument.
[2] . In an earlier part of the jury instructions, the trial court defined the term "preponderance of the evidence" as meaning the "greater weight of the evidence." *Page 1