[Cite as *In re S.C.R.*, 2018-Ohio-4063.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| S.C.R. | : | CASE NO. CA2017-11-018 |
| | : | O P I N I O N<br>10/8/2018 |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 20164215

Kent J. Depoorter, 7501 Paragon Road, Centerville, OH 45459, for appellant, father

Mother, 7545 Oso Blanca Road, Apartment 3053, Las Vegas, Nevada 89149, appellee, pro se

**S. POWELL, P.J.**

{¶ 1} Appellant, the biological father of S.C.R. ("Father"), appeals the decision of the Clinton County Court of Common Pleas, Juvenile Division, dismissing his complaint for custody of S.C.R. upon finding it lacked subject matter jurisdiction to rule on the complaint pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") as codified in Ohio under R.C. Chapter 3127. For the reasons outlined below, we affirm.

{¶ 2} On August 21, 2016, appellee, S.C.R.'s biological mother ("Mother"), gave birth to S.C.R. in Las Vegas, Nevada. Approximately two months later, on October 11,

2016, Father filed a "Complaint for Paternity" with the juvenile court claiming he was S.C.R.'s biological father.[1] Several months later, on February 28, 2017, a juvenile court magistrate issued an order finding paternity was established in that genetic testing proved Father was S.C.R.'s biological father. The juvenile court later affirmed and adopted the magistrate's decision on March 1, 2017. Neither party appealed from the juvenile court's decision.

{¶ 3} On April 26, 2017, eight months after Mother gave birth to S.C.R. in Nevada, Father filed a "Complaint for Custody" with the juvenile court. In support of his complaint, Father alleged that Mother had "moved to Las Vegas Nevada prior to the birth of the minor child" and that "the minor child, [S.C.R.], was born in Las Vegas, Nevada on 8/21/2016." That same day, Father also filed an affidavit of child custody information. As part of this affidavit, Father swore to the fact that S.C.R. was then residing with Mother, and had always resided with Mother, at 7545 Oso Blanca Road, Apartment 3053, Las Vegas Nevada, 89149. Shortly after receiving Father's complaint, the juvenile court appointed a special process server to perfect service on Mother in Nevada. The juvenile court then scheduled the matter for a pretrial hearing before a juvenile court magistrate.

{¶ 4} On June 28, 2017, Father moved for a continuance after service on Mother in Nevada proved unsuccessful. As part of this motion, Father included a certificate of service certifying that a copy of his motion was sent to Mother at 7545 Oso Blanca Road, Apartment 3053, Las Vegas, Nevada 89149 "by mailing the same on the date of filing." Finding Father's motion well-taken, the juvenile court rescheduled the pretrial hearing on Father's complaint for custody. Father thereafter moved for yet another continuance after personal

---

1. As part of his appellate brief and oral argument before this court, Father alleged that he filed both a complaint for paternity and a complaint for custody with the juvenile court on October 11, 2016. The record does not support Father's claim.

service on Mother in Nevada again proved unsuccessful. The juvenile court never ruled on Father's motion.

{¶ 5} On September 12, 2017, despite Father's claims that service of his complaint for custody had not yet been perfected on Mother, the magistrate issued a decision dismissing Father's complaint for want of subject matter jurisdiction. In so holding, the magistrate stated, in pertinent part, the following:

> The magistrate early-on in this case expressed concern whether the Uniform Child Custody Jurisdiction and Enforcement Act informed against this court having jurisdiction to decide a custody case. Upon review of the facts in this case as indicated in the pleadings and prior hearings, the magistrate notes that the subject child lived in the State of Nevada with the child's mother since birth (8/21/2016). The child has now been in Nevada for over a year. The subject child never lived in Ohio.
>
> The magistrate decides that under the UCCJEA (R.C. section 3127.01 et seq.), Ohio courts have no jurisdiction to determine custody of [S.C.R.]. Nevada is the home state.

{¶ 6} On September 26, 2017, Father filed an objection to the magistrate's decision arguing the magistrate's decision constituted an abuse of discretion in that the decision was against the manifest weight of the evidence. In support, although previously swearing to the fact as part of his affidavit for custody information that S.C.R. was then residing with Mother, and had always resided with Mother, at 7545 Oso Blanca Road, Apartment 3053, Las Vegas Nevada, 89149, Father argued the magistrate's decision finding S.C.R. had lived in Nevada with Mother in the eight months preceding when he filed his complaint for custody was pure speculation. The juvenile court denied Father's objection on October 10, 2017.

{¶ 7} Father now appeals from the juvenile court's decision, raising the following single assignment of error for review.[2]

_____

2. The record indicates Mother filed a brief with this court on May 23, 2018. However, because Mother's brief did not contain a certificate of service, this court notified Mother that her brief would be stricken from the record

- 3 -

{¶ 8}   THE TRIAL COURT ERRED IN DISMISSING PLAINTIFF-APPELLANT'S COMPLAINT FOR CUSTODY WITHOUT TAKING ANY TESTIMONY REGARDING JURISDICTION.

{¶ 9}   In his single assignment of error, Father argues the juvenile court erred by dismissing his complaint for custody without taking any testimony or evidence as to whether it had subject matter jurisdiction to rule on the complaint.  We disagree.

{¶ 10} This appeal addresses the application of the UCCJEA in determining whether the juvenile court had subject matter jurisdiction to rule on Father's complaint for custody. The UCCJEA was drafted to avoid jurisdictional conflicts and competition between different states in child custody litigation.  *Powers-Urteaga v. Urteaga*, 12th Dist. Warren No. CA2014-08-109, 2015-Ohio-2465, ¶ 13; *Berube v. Berube*, 5th Dist. Stark No. 2017CA00102, 2018-Ohio-828, ¶ 10 ("[t]he UCCJEA was drafted by the National Conference of Commissioners on Uniform State Laws to resolve interstate custody disputes and to avoid jurisdictional competition with courts of other jurisdiction").  The intent of the UCCJEA was to ensure that a state court would not exercise jurisdiction over a child custody proceeding if a court in another state was already exercising jurisdiction over the child in a pending custody proceeding.  *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, ¶ 20-21.  Ohio is one of over 40 states to have adopted the UCCJEA.  *In re N.R.*, 7th Dist. Mahoning No. 09 MA 85, 2010-Ohio-753, ¶ 11.  Nevada is also one of those states to have adopted the UCCJEA.  *Kar v. Kar*, 378 P.3d 1204, 1204 (Nev.2016).

{¶ 11} The UCCJEA, which was adopted by the General Assembly in 2004 and

---

if service was not completed as this court instructed.  Mother, who at all times was appearing pro se, never filed any documentation with this court indicating she complied with this court's instructions regarding service. Mother's brief will therefore not be considered by this court in rendering this decision.

became effective in 2005, is codified in Ohio under R.C. Chapter 3127.[3] As part of this chapter, R.C. 3127.15(A) "provides four types of initial child-custody jurisdiction: home-state jurisdiction, significant-connection jurisdiction, jurisdiction because of declination of jurisdiction, and default jurisdiction." *Celebrezze*, 2008-Ohio-853 at ¶ 31. Specifically, pursuant to R.C. 3127.15(A):

> (A)  Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:
>
> > (1)  This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
> >
> > (2)  A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum * * * and both of the following are the case:
> >
> > > (a)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.
> > >
> > > (b)  Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.
> >
> > (3)  All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child * * *.
> >
> > (4)  No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

{¶ 12} It is well-established that custody matters are generally reviewed under an

---

3. A thorough discussion of the legislative history behind the General Assembly's passage of the UCCJEA as codified in R.C. Chapter 3127 can be found in this court's decision in *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-Ohio-6226.

- 5 -

abuse of discretion standard. *In re A.G.M.*, 12th Dist. Warren No. CA2011-09-095, 2012-Ohio-998, ¶ 14, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, "[a]n appellate court reviews de novo a [juvenile] court's determination regarding the existence of subject matter jurisdiction, that is whether the trial court has or lacks jurisdiction in the first place[.]" *Urteaga*, 2015-Ohio-2465 at ¶ 15; *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-Ohio-6226, ¶ 26 ("an appellate court reviews de novo the decision of the [juvenile] court regarding the existence of subject matter jurisdiction, because such a determination is a matter of law"); *Crable v. Ohio Dept. of Youth Servs.*, 10th Dist. Franklin No. 09AP-191, 2010-Ohio-788, ¶ 8 ("[a]n appellate court reviews an appeal of a dismissal for lack of subject-matter jurisdiction under a de novo standard of review").

{¶ 13} Because the issue in this case is whether the juvenile court could properly exercise subject matter jurisdiction to rule on Father's complaint for custody, not whether the juvenile court erred and abused its discretion in declining to exercise that jurisdiction based on, among others, an inconvenient forum, a de novo standard of review applies. *Urteaga* at ¶ 15. "In conducting a de novo review, this court independently reviews the record without giving deference to the [juvenile] court's decision." *Dinan v. Dinan*, 12th Dist. Warren No. CA2013-09-082, 2014-Ohio-3882, ¶ 13.

{¶ 14} As noted above, Father argues the juvenile court erred by dismissing his complaint for custody without taking any testimony or evidence as to whether it had subject matter jurisdiction to rule on the complaint. In reviewing Father's brief submitted to this court, there can be no dispute that if the juvenile court had subject matter jurisdiction that said jurisdiction would be conferred upon the juvenile court in accordance with R.C. 3127.15(A)(1). Again, pursuant to that statute, "an Ohio court can exercise its jurisdiction if Ohio is the home state of the child when the proceeding is commenced, or if Ohio is the

child's home state 'within six months before the commencement of the proceeding' and the child is absent from Ohio but a parent or person acting as a parent continues to live in Ohio." *Girsha*, 2011-Ohio-6226 at ¶ 28.

{¶ 15} In applying R.C. 3127.15(A)(1) to this case, and in reviewing Father's arguments advanced on appeal, the only question in dispute is whether Ohio is S.C.R.'s "home state" either (1) when Father filed his complaint for custody, or (2) within six months before Father filed his complaint for custody. Based on the plain language of R.C. 3127.15(A)(1), these jurisdictional requirements must be met at the time when the complaint for custody was filed with the juvenile court, irrespective of what may have occurred subsequent to that filing.

{¶ 16} After a full and thorough review of Father's complaint for custody and custody affidavit of custody information, it is clear that Ohio is not and never has been S.C.R.'s "home state" as that term is defined by R.C. 3127.01(B)(7). Rather, just as the juvenile court found, it is Nevada, not Ohio, that was S.C.R.'s "home state" at the time Father filed his complaint for custody. This is true even though the juvenile court did not take any testimony or evidence prior to issuing its decision dismissing Father's complaint. Therefore, because the juvenile court lacked subject matter jurisdiction to make an initial determination regarding custody of S.C.R. in accordance with R.C. 3127.15(A)(1), the juvenile court's decision to dismiss Father's complaint was proper.

{¶ 17} As defined by R.C. 3127.01(B)(7), the term "home state" means "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately preceding the commencement of a child custody proceeding and, if a child is less than six months old, the state in which the child lived from birth with any of them." In other words, as noted by this court previously, "[a] child's 'home state' is one where he or she lived with a parent for at least six consecutive months prior to the

commencement of the custody or visitation proceeding." *Asburn v. Roth*, 12th Dist. Butler Nos. CA2006-03-054 and CA2006-03-070, 2007-Ohio-2995, ¶ 13; *In re E.G.*, 8th Dist. Cuyahoga No. 98652, 2013-Ohio-495, ¶ 14 ("a child's home state is where the child lived for six consecutive months ending within the six months before the child custody proceeding was commenced").

{¶ 18} The record in this case, which, as noted above, includes only Father's complaint for custody and affidavit of custody information, conclusively establishes that Mother has resided with S.C.R. in Nevada, not Ohio, after she gave birth to S.C.R. in Nevada on August 21, 2016. Therefore, based on Father's complaint for custody and affidavit of custody information, there can be no dispute that S.C.R. had lived with Mother in Nevada for eight months preceding when Father filed his complaint for custody on April 26, 2017. This is true despite the fact that Mother only left Ohio and moved to Nevada two weeks prior to giving birth to S.C.R. "R.C. Chapter 3127, 'gives jurisdictional priority and exclusive continuing jurisdiction' to a child's 'home state.'" *In re A.O.*, 2d Dist. Montgomery Nos. 25807 and 25996, 2014-Ohio-527, ¶ 8, quoting *Celebrezze*, 2008-Ohio-853 at ¶ 21. Therefore, because S.C.R. was born in Nevada, the state where S.C.R. has lived with Mother ever since, it is Nevada, not Ohio, that is S.C.R.'s "home state" as that term is defined by R.C. 3127.01(B)(7).

{¶ 19} Father nevertheless argues the juvenile court's decision finding S.C.R. had lived in Nevada with Mother since his birth is pure speculation. However, as a simple review of the record reveals, Father himself listed Mother's address as 7545 Oso Blanca Road, Apartment 3053, Las Vegas, Nevada 89149 on each of his filings with both the juvenile court and this court. As noted above, this includes Father's affidavit of child custody information attached to his complaint for custody filed with the juvenile court, as well as his notice of appeal and brief submitted to this court, thus giving little credence to Father's claim

- 8 -

that Mother and S.C.R.'s whereabouts are generally unknown.

{¶ 20} In so holding, we note that the magistrate in this case reached its decision based on the "pleadings and prior hearings." The magistrate, however, in conjunction with the juvenile court, needed to go no further than the pleadings to reach this decision. Plainly stated, Father alleged in his complaint for custody, and thereafter swore in his affidavit of custody information, facts conclusively establishing subject matter jurisdiction in Nevada, not Ohio, in accordance with R.C. 3127.15(A)(1). This case should have been, and hereby is, dismissed pursuant to Civ.R. 12(H)(3). Pursuant to that rule, "[w]henever it appears * * * otherwise that the court lacks jurisdiction of the subject matter, the court *shall* dismiss the action." (Emphasis added.) This court, therefore, need not reach any other argument raised by Father within his single assignment of error herein.

{¶ 21} In reaching this decision, we note that Mother never filed a motion to dismiss Father's complaint for custody pursuant to Civ.R. 12(B)(1) with the juvenile court. However, although Mother never filed a motion to dismiss Father's complaint, "[i]t is axiomatic that subject-matter jurisdiction cannot be waived and may be raised sua sponte by the trial court." *In re Appeal of Hollingsworth Media Group, Inc.*, 10th Dist. Franklin No. 09AP-724, 2009-Ohio-6484, ¶ 15; *State ex rel. Bond v. Velotta Co.*, 91 Ohio St.3d 418, 419 (2001) ("subject matter jurisdiction cannot be waived and may be raised by us sua sponte"); *Critzer v. Critzer*, 8th Dist. Cuyahoga No. 90679, 2008-Ohio-5126, ¶ 8 ("subject matter jurisdiction may be raised by the parties to the case or otherwise"). That is because, as noted by the Ohio Supreme Court, "subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case[.]" *Celebrezze*, 2008-Ohio-853 at ¶ 45.

{¶ 22} It is well-established that subject matter jurisdiction "may not be conferred by agreement of the parties or waived, and is the basis for mandatory, sua sponte dismissal either at the trial court or on appeal." *In re B.M.*, 4th Dist. Hocking No. 16CA12, 2017-Ohio-

7878, ¶ 8, citing *Keeley v. Stoops*, 7th Dist. Belmont No. 13 BE 23, 2014-Ohio-4161, ¶ 10. Therefore, in accordance with Civ.R. 12(H)(3), and based on the case law applying the UCCJEA as codified in Ohio under R.C. Chapter 3127, once the juvenile court determined that it lacked subject matter jurisdiction based on Father's complaint for custody and affidavit of custody information, the juvenile court was required to the dismiss Father's complaint for want of subject matter jurisdiction. *Nord Community Mental Health Ctr. v. Lorain Cty.*, 93 Ohio App.3d 363, 365 (9th Dist.1994). This is true despite the fact that service, personal or otherwise, was never perfected on Mother.

{¶ 23} The juvenile court in this case "had no authority to exercise jurisdiction in this matter, and if it had attempted to do so, its judgments would have been void as a matter of law." *McDaniel v. McDaniel*, 12th Dist. Warren No. CA2006-12-142, 2007-Ohio-4220, ¶ 18. The juvenile court, therefore, did not err by dismissing Father's complaint for custody upon finding it lacked subject jurisdiction to rule on his complaint pursuant to the UCCJEA as codified in Ohio under R.C. Chapter 3127, specifically R.C. 3127.15(A)(1). Accordingly, because the juvenile court did not err by dismissing Father's complaint for custody for lack of subject matter jurisdiction, Father's single assignment of error lacks merit and is overruled. This decision is rendered without prejudice to Father and should in no way be construed as precluding Father from seeking his desired relief in the appropriate forum; Ohio is not that forum.

{¶ 24} The dissent claims that the majority's decision in this case "holds if subject matter jurisdiction is disputed, as a matter of law, the case must be dismissed." That is not this court's holding. Applying the plain language found in R.C. 3127.15 to the record properly before this court, and in looking back six consecutive months immediately preceding the date when Father filed his complaint for custody, Mother has resided with S.C.R. in Nevada, not Ohio, thereby rendering Nevada S.C.R.'s "home state" as that term

is defined by R.C. 3127.01(B)(7). Father cannot contradict his own allegations to create a fact dispute. Neither Father nor S.C.R. are in "no-man's land." Therefore, because the juvenile court properly dismissed Father's complaint for custody upon finding it lacked subject matter jurisdiction to rule on the same, the juvenile court's decision must be affirmed.

{¶ 25} Judgment affirmed.

M. POWELL, J., concurs.

PIPER, J., dissents.

**PIPER, J., dissenting.**

{¶ 26} When applying Ohio's codification of the UCCJEA, the majority holds if subject matter jurisdiction is disputed, as a matter of law, the case must be dismissed. This holds true for the majority opinion even if no other state has accepted jurisdiction, no communication with another state has occurred, no action is pending or anticipated in another state, and no party has officially asserted jurisdiction in another state.

{¶ 27} On the bare bones representation of residency that the parties' child is physically present and resides in another state, the majority finds that alone forces home state jurisdiction upon another state. Yet, Ohio has exclusive, continuing jurisdiction and physical presence of the child is not necessary to make a child custody determination. R.C. 3127.15 (C); *Beck v. Sprik*, 9th Dist. Medina No. 07CA0105-M, 2008-Ohio-3197.

{¶ 28} With respect for the opinion of my colleagues, I am compelled to dissent because I find that the majority's application of the UCCJEA violates the plain meaning and designated purpose of the UCCJEA.

**PURPOSE OF UCCJEA**

**{¶ 29}** The majority cites general black letter law that sua sponte dismissal is appropriate if there is a lack of subject matter jurisdiction. Yet, almost all the cases cited by the majority do not involve the UCCJEA, which has specific, and multiple, forms of subject matter jurisdiction a juvenile court can exercise.[4] Similar to the rules of construction, one would expect the more specific law of the UCCJEA to take precedent over the law as generally applied. *See State ex rel. Belknap v. Lavelle*, 18 Ohio St.3d 180, 182 (1985).

**{¶ 30}** Surprisingly, the majority concedes the UCCJEA anticipates a dismissal if there are competing jurisdictions exercising their authority. The majority acknowledges "(t)he intent of the UCCJEA was to *ensure* that a state court would not exercise jurisdiction * * * *if* a court in another state was *already exercising* jurisdiction …" (Emphasis added.) Significantly here, no other court is "already exercising" jurisdiction. In dismissing the case as a matter of law, without another jurisdiction already exercising jurisdiction, the majority creates a no-man's land for Father and his child-related proceedings.[5]

**{¶ 31}** The UCCJEA ensures an open door to the judicial system so that child-related proceedings can take place despite a parent's choice to relocate to a different state.

**{¶ 32}** Notwithstanding the mobility of parents, there should never be a "no-man's land" for children. Therefore, the UCCJEA is designed to ensure that a forum will always be in existence concerning custody issues that need to be decided regardless of the

---

4. The majority does cite *Critzer v. Critzer*, 8th Dist. Cuyahoga No. 90679, 2008-Ohio-5126, which is a UCCJEA case. In that case, there were two separate states with proceedings pending creating a jurisdictional conflict between Ohio and Pennsylvania. One of the parties asserted the issue of subject matter jurisdiction, and upon appellate review, it was determined the Ohio court did not abuse its discretion in exercising jurisdiction and not declaring Ohio an inconvenient forum. It appears the case would not support the proposition that dismissal is required as a matter of law when jurisdiction is disputed.

5. The majority creates a Catch-22 for Father. In dismissing Father's pending Ohio case, and directing him to open a Nevada case, Father will never have competing jurisdictions because an "already exercising jurisdiction" can never be in existence.

parent's circumstances. *In the Matter of A.G.M.*, 12th Dist. Warren No. CA2011-09-095, 2012-Ohio-998, ¶15.

{¶ 33} When jurisdictional disputes occur, it is only through the cohesive cooperation of the two states that allows them to act with unity and guarantee parents a readily available jurisdiction to resolve any child-related issues. Here, the record is unequivocal there is no jurisdictional competition taking place.[6]

**OHIO'S JURISDICTION EXISTS**

R.C. 3127.16 Initial Determination

{¶ 34} "Child custody proceedings" within the meaning of the UCCJEA include parentage/paternity proceedings. R.C.3127.01(B)(4). It is undeniable that "parentage" and "paternity" are used interchangeably by Ohio courts. *E.B. v. R.F.*, 6th Dist. Erie No. E-11-045, 2012-Ohio-388, ¶8; *G.P. v. L.M.*, 5th Dist. Morrow No. 16CA0005, 2016-Ohio-7955, ¶12. R.C.3127.01(B)(4) permits "child custody proceedings" to include parentage proceedings.[7] Similarly, Nevada's N.R.S. 125A055 states a child custody proceeding "includes a proceeding for * * * paternity."

{¶ 35} Therefore, by definition, the commencement of a parentage proceeding is the commencement of a child custody proceeding. The UCCJEA defines "commencement" of a child custody proceeding as the filing of the first pleading. R.C. 3127.01(B)(5); N.R.S. 125A065. Unquestionably, the first pleading commencing the proceedings was Father's filing to establish parentage. "[A] child custody action is commenced by the filing of the first pleading in a proceeding." *State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, ¶ 12.

---

6. Father suggests Mother's conduct is a subterfuge to deny him a forum, however, with no evidentiary hearing this suggestion is yet to be supported.

7. "Parentage" is defined as a state or condition of being a parent. Kindred in the direct ascending line. Black's Law Dictionary (6th Ed.1990).

{¶ 36} This makes sense because Father could not establish visitation or custody until he established his parentage. According to the court's docket, when Father filed his first pleading commencing his child custody proceeding, he was charged costs for "paternity, support, visitation." In this initial pleading, he requested all other relief appropriate. In other words, the court was aware other issues would be addressed within the same case. When Father filed for custody, it was filed under the same case number as part of the same case and docketed as a motion for custody.[8] In dismissing Father's request for custody, the magistrate reviewed notes, the pleadings, and previous hearings which included the parentage portion of the case.

{¶ 37} The court initially exercised jurisdiction (both personal and subject matter) over the parties pursuant to R.C. 3127.15. Mother was served in Nevada and participated while in Nevada. Once the court made a determination in the "child custody proceeding," it had exclusive, continuing jurisdiction. R.C. 3127.16. Therefore, Father is correct in disputing the trial court's sua sponte dismissal that determined as a matter of law, Ohio has no form of subject matter jurisdiction.

{¶ 38} It is irrelevant at this point, and it is not before us on appeal, whether the court initially exercised its authority because the facts of this case technically did not establish any one state with "home state" jurisdiction or because it considered Ohio as the "home state." Despite Mother taking their unborn baby to another state in order to give birth, exclusive continuing jurisdiction remains in Ohio once a determination was made exercising jurisdiction until the court decides otherwise. Once the initial child custody proceedings took place, Ohio has exclusive continuing jurisdiction. *S.D. v. K.H.*, 8th Dist. Cuyahoga No.

---

8. Whether the pleading was considered a motion or a complaint is of little consequence. Regardless of its caption, the motion was considered by the court to be within the same matter. Its caption was not raised as an issue before us, nor was it relied upon by the court since it considered the entire file in its sua sponte dismissal.

105244, 2018-Ohio-1181.[9]

## R.C. 3127.15(A)(1) Home State

**{¶ 39}** Father also claims Ohio has exclusive, continuing jurisdiction because it is the home state, not Nevada. He asserts that Mother left their home state to temporarily deprive Father of participating in the birth of their child. Father suggests the permanency of Mother's residency in Nevada is dubious at best. He suggests her conduct is unjustified to alienate Father from his child and evade jurisdiction in Ohio.

**{¶ 40}** Father's arguments are not without merit, as courts have considered temporary absences from a home state as not divesting the home state of jurisdiction. *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013-Ohio-3588 (where the status of home state was disputed and an absence from Ohio to give birth in Kentucky was temporary); *Ogawa v. Ogawa*, 125 Nev. 660, 221 P.3d 699 (2009) (where the Nevada Supreme Court recognized an absence of eight months to be temporary and not divesting it of home state jurisdiction).

**{¶ 41}** We have previously noted that R.C. 3177.22 speaks to "unjustifiable conduct," warning that "jurisdiction is not proper if it is garnered by moving children from the home state." *Mulatu v. Girsha*, 12th Dist. Clermont No. CA2011-07-051, 2011-Ohio-6226, ¶36. Nevada's N.R.S. 125A375 is essentially equivalent to Ohio's R.C. 3177.22.

**{¶ 42}** When jurisdictional facts are disputed, a trial court's findings are subject to an abuse of discretion review, not de novo, and will be upheld if not clearly erroneous and supported by substantial evidence. *Ogawa* at 668; *Thebeau v. Thebeau*, 4th Dist. Lawrence No. 07CA34, 2008-Ohio-475, ¶ 16. In the matter before us, however, the trial court conducted no evidentiary hearing and made no findings because it erroneously

---

9. If subject matter jurisdiction never existed in Ohio as the majority suggests, the parentage determination must be considered void. *S.D. v. K.H.*, 8th Dist. Cuyahoga No. 105244, 2018-Ohio-1181, ¶18.

determined there was no jurisdiction as a matter of law.

{¶ 43} Only one case could be located that referenced a dismissal based on the pleadings without conducting an evidentiary hearing. *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas*, 147 Ohio St.3d 432, 2016-Ohio-1519. However, that dismissal came only after Ohio and Virginia consulted with one another and decided the home state was Virginia.

**Jurisdiction Reconsidered**

{¶ 44} Even though the trial court had subject matter jurisdiction initially, it may re-evaluate whether it should consider exercising its jurisdictional authority pursuant to the UCCJEA. Any decision would be an exercise of discretion, yet with proper findings, a court may decline to exercise its jurisdiction at any time. R.C. 3127.21.

{¶ 45} When two states communicate and ascertain the availability of a forum to exercise jurisdiction, it fulfills the very essence of the UCCJEA. Even a home state with the existence of jurisdiction pursuant to R.C. 3127.15(A)(1) can decline to exercise its jurisdiction. *State ex rel. M.L.*, 2015-Ohio-4855 at ¶ 16.

{¶ 46} We have recently observed an Ohio court contacting a Michigan court to suggest that it was Michigan which had the proper authority to exercise jurisdiction. This communication occurred despite no filings of record in Michigan. The communication and coordination resulted in Michigan declining jurisdiction and Ohio retaining the matter. *In the Matter of A.G.M.*, 2012-Ohio-998 at ¶ 16. We noted that the integrity of the UCCJEA sometimes requires consultation with another state court and that court "need not have a pending motion, or even a case or controversy, officially filed to broach the jurisdictional issue." *Id.* at ¶ 23. This process, not a unilateral dismissal, honors the spirit of the UCCJEA and ensures a parent open access to a readily-awaiting forum willing to exercise jurisdiction.

{¶ 47} If no state court is clearly and singularly the home state, it is the

communication and coordination resulting in an available jurisdiction that shines well upon the judicial system. *G.P. v. L.M.*, 5th Dist. Morrow No. 16CA0005, 2016-Ohio-7955, ¶ 27. The discussion between judges keeps the door open to "the most appropriate state for the matter to be heard based on the circumstances." *Id.* at ¶ 14. Interstate consultation unites the judicial system to ensure parents a forum to preside over their child-related issues. *Lafi v. Lafi*, 2d Dist. Miami No. 2007 CA 37, 2008-Ohio-1871 ¶ 13.

### Additional Considerations

{¶ 48} In the circumstances of our limited record, Nevada and Ohio would likely consider Ohio's potential jurisdiction should Nevada consider declining. The file reflects Mother has not responded to mailings from the court, thus it remains uncertain where she and the child currently reside.

{¶ 49} Father emphasizes the proceedings for parentage were commenced in Ohio. He makes the argument that Mother was raised in Ohio, her family is in Ohio, and Mother was previously married and subsequently divorced in Ohio. Father asserts that Mother's children from her first marriage continue to reside in Ohio and that she frequents Ohio. Depending on the circumstances as they might be developed, it appears undeniable that much of the evidence and witness testimony will be derived from sources in Ohio. It appears there is substantial connection to Ohio. R.C. 3127.15(A)(2).

### CONCLUSION

{¶ 50} There are four types of subject matter jurisdiction in existence in any one case pursuant to UCCJEA. Which type of subject matter jurisdiction is to be implemented will depend upon the factual scenario of individual situations. Generally, if home state jurisdiction is undisputed, or otherwise undeniable, it will have priority over other forms of jurisdiction. Home state jurisdiction, however, can be disputed and despite its priority can even be declined depending upon the facts. It may not always be the appropriate forum to

be exercised which is why the UCCJEA encourages communication between jurisdictions.

{¶ 51} Here, the trial court initially exercised the existence of its subject matter jurisdiction. Subsequently, the court chose not to continue exercising its jurisdiction, erroneously believing the record was ripe for considering Nevada had priority. However, continuing to exercise its jurisdiction is different than finding none is in existence. The existence of jurisdiction and the exercise of jurisdiction are separate matters requiring different standards of review.

{¶ 52} The majority determines the standard of review is de novo because as a matter of law it finds no form of subject matter jurisdiction ever existed. However, it cannot be said as a matter of law one of the forms of subject matter jurisdiction was not in existence. While the trial court chose not to continue exercising jurisdiction, no other state indicated an existence of jurisdiction to exercise. Whether jurisdiction will be exercised requires an abuse of discretion standard of review. Therefore, it is my belief that the majority has applied an incorrect standard of review.

{¶ 53} Father initiated paternity proceedings to legally begin the acceptance of his responsibilities as a parent. This was done at his effort and expense. Now he seeks to continue those responsibilities relative to issues such as custody, visitation, child support and medical expenses. A young man who seeks to be a responsible father and participating parent should not be obstructed by an overly narrow application of the UCCJEA but rather he should be reassured by its very purpose. If subject matter jurisdiction was an issue, the court should have facilitated development of the record. To do otherwise slams the door, denying Father access to the judicial system the UCCJEA previously ensured.

{¶ 54} Therefore, the trial court's dismissal was premature and based upon an undeveloped record. This matter requires reversal and remand so that the parties can have their full and fair day in court regardless of which state is ultimately determined to be the

most appropriate forum for exercising jurisdiction.

{¶ 55} The juvenile court undoubtedly has subject matter jurisdiction over the child-related issues and is authorized to exercise jurisdiction pursuant to the UCCJEA. Consequently, I find the trial court abused its discretion in failing to exercise its continuing jurisdiction by determining there was no existence of subject matter jurisdiction as a matter of law. I would reverse and remand for further proceedings accordingly. I therefore respectfully dissent from the majority's judgment herein.